and number 152426 United States v. Iskandar Keplani. May it please the Court, Jonathan Cox, CJA Counsel for Defendant Appellant Tony Bedini. I'd like to reserve two minutes of my time for rebuttal, if I may. There are several issues raised in this appeal, but this morning I'd like to focus on the variance between the single, broad conspiracy that was charged in the indictment and the two smaller conspiracies that were actually supported by the evidence presented at trial. I'd also like to discuss the prejudice that Mr. Bedini suffered as a result of that variance. The trial evidence indicated at most that there were two conspiracies, not the single conspiracy charged. On the one hand, you have the Massachusetts defendants, based out of the Arbery Cafe here in Roslindale. On the other hand, you have the California defendants, including Mr. Bedini. The evidence at trial showed that what connected these two groups was not a conspiracy, but instead an arm's-length buyer-seller relationship. Let me question your characterization of it as simply a series of arm's-length sales. Because when the Boston people ran into money shortages, the California side was willing, partially or wholly, to front drugs to them, to engage in deferred payment transactions. And that seems to me to suggest something more than just an arm's-length relationship. It suggests that the people in California wanted the Boston conspiracies to succeed. And isn't that an example of a relationship which is not simply arm's-length? Well, it is true that the two instances of credit sales, the one which bookended the selling relationship that was in December of 2010 and then November of 2011, it's true that the government relies on those as the primary examples of something that might transform this into something more than a buyer-seller relationship. But credit sales are not per se evidence of a conspiracy. Typically, courts have considered credit sales along with other factors. I'll grant you that. For example, if the suppliers in California routinely engaged in credit sales, that would have a very different significance from what we at least have been told through the evidence in this case, that there was something unusual about their relationship in the extension of credit and fronting drugs. And so wasn't the fact finder entitled to infer something more than just arm's-length sales relationships for that reason? Well, I'm not sure that there was an entitlement to make that inference. I think when this court was previously considered instances of credit sales, determinations have also been based, for example, on an Ortiz-Eilis, for example. There were more credit sales, but then what was also important was the interdependence that was demonstrated between the groups. In that case, for example, the groups, the buyer and seller, were also paying commissions to a third party even while he was incarcerated, indicating a level of connection that wasn't present here. I don't think that the credit sales would be sufficient standing alone to push this into the realm of a conspiracy. Just with respect to the prejudice issue, am I right that if the evidence of the single series, which is the smaller conspiracy, is strong enough, that just washes out the prejudice, even if there was a lot of evidence heard about the other conspiracy? Well, that's the second prong of the three-part test this court laid out in Glenn. So you could have sufficient evidence for the smaller conspiracy, for example, the California case. Is there any guidance how much evidence there has to be of that for it to be strong enough so that we don't worry about the prejudicial impact of the evidence about the aspect of the conspiracy that we're assuming is the wrong conspiracy? Well, there doesn't appear to be any very clear articulation, but if you look at this court's decision in De Los Santos, for example, in that case, the two defendants were, there was sufficient evidence to find a smaller conspiracy, including direct tapes of phone conversations where they talked about cocaine transactions, very direct evidence of their involvement in the smaller conspiracy, but the court nevertheless found that they had been sufficiently prejudiced to require that the convictions be vacated. So, again, there's no bright-line rule for how much is necessary, but it is clear that even if there is sufficient evidence, including direct admissions in audio tape recordings, that's not quite enough to show enough sufficiency to eliminate prejudice. And along those lines, the prejudice that was suffered here was primarily in the form of spillover evidence. I'm sorry, the form of what? Spillover evidence. The main form of that came in the form of the evidence concerning the drug bust in Homestead, Florida. So the jury saw videotape of that drug bust happening. This is involving Mendoza and Caplani. This is back in March of 2010. They saw the videotape of that. They saw the physical display of the kilos of cocaine from that drug bust. Those were presented in the courtroom. And, again, this was several months before Misbridini's first alleged sale of cocaine. This is the kind of evidence, particularly the physical display of cocaine, that particularly the Eighth and Ninth Circuits have noted can be extremely prejudicial, especially when it comes outside the context of a smaller conspiracy in which the defendant might have actually participated. You also heard testimony from Mendoza about drug sales and distribution in Boston back in 2009. Thank you. May it please the Court, Daniel Clorty appointing counsel for Mr. Caplani. With the Court's permission, I'd like to reserve one minute for rebuttal. The Court has heard argument on the conviction. I'd like to focus my limited amount of time on several sentencing issues that are presented in the brief. In particular, Mr. Caplani contends that the district court erred when it failed to make a specific finding as to the drug weight attributable to him. The government, in its opposition, argues that the Court should be reviewing this under a plain error standard, and we would submit that on this record that's simply wrong. The defendant objected to the PSR. In some detailed objections in the PSR, the defendant objected in a sentencing brief that was submitted to the Court, and the defendant orally argued the issue to the Court. And notwithstanding those assertions, all the Court did here was simply find, it simply said it had read the PSR and agreed with it, did not make any specific findings as to the drug weight that was attributable to Mr. Caplani. And as the Court's decisions in Colon Solis and in Corey make crystal clear, that more is required in order to understand the sentencing, the sentence that the Court ultimately imposed. Did the pre-sentence report attribute specific drug weights to Caplani? It did. And the district court said that it agreed with the PSR report. Isn't that correct? Well, I wouldn't say the district court went that far. The Court simply said that the guidelines were appropriate. So certainly by implication, there's some implication there that the Court agreed, but the Court never addressed. In the Corey decision, this Court acknowledged that in making these individualized determinations, at times or often the Court has to make credibility determinations. And there were specific issues in dispute regarding that drug weight, including the fact that at least a portion, a significant portion, of the drug weight that was attributed to Mr. Caplani in the PSR was larger than the amount for which Mr. Bedini had been found responsible. Just so I understand your argument, are you saying that the error was not making a finding, or are you saying that the error was making a finding based on the PSR? Well, I guess a little bit of both. I would say both. That the Court needs to make a specific finding, an individualized finding as to the drug weight attributable to the defendant. This is where I'm confused, and I suspect Judge Miller will be too. If the PSR says that Caplani is responsible for 50 to 55 kilograms, pick your numbers, a computation with which you disagree, but the District Court says, I accept, despite the objection, I accept the PSR, it seems to me that's a specific finding, and so an objection that the Court didn't make an individualized finding is going nowhere. Now, there may be a further objection, that that individualized finding doesn't pass muster, because there are reasons why the amount specified, which the Court adopted, is wrong or is clearly an error, whatever the standard is. Well, Your Honor, I guess I would suggest that the Court here didn't quite do that. All the Court said, the only allusion, actually there were two things the Court said that are relevant here, it simply said the guidelines were, quote, appropriate, not even specific as to the drug weight issue. The only way to read that, I think, is the totality of the guidelines. And second, the Court even said, in describing it, said there was only one point of contention, which the Court addressed specifically, which had to do with the leadership enhancement. So the Court, if... The guidelines are calculated, all right, in accordance, inter alia, with the drug weight. In other words, there's a specific drug weight finding built into the guidelines. There was, Your Honor, and the defendant objected very specifically to that. I have said that. When the Court says the guidelines are appropriate and there's only one point of contention, meaning one point, I interpret as meaning there's only one point that's open to legitimate question, and then goes on to discuss rule in the offense, I have trouble reading that any other way than that Judge Stearns accepted the pre-sentence officers, the probation officers' drug weight calculation or attribution. Well, I think she did, Your Honor. I guess I would suggest simply that that simple statement is not enough of an individualized finding as required by this Court's precedent. With the little time I have left, I would also like to address the other significant sentencing issue, which relates really to the disparity between the sentence that was imposed on Mr. Caplani as opposed to the other defendants, and in particular, the fact that only Mr. Caplani among all the defendants received the leadership enhancement under 3B1.1. But that leadership enhancement itself accounts in substantial measure for what you term the disparity. That's a four-level boost in the guideline range. It does, Your Honor. And if I may continue, it does. The problem is that only Mr. Caplani received that. His partner did not receive it. No other defendant received it. And I would suggest that under those circumstances, based on the totality of the facts, that the Court fail to address that as well to adequately explain the sentence to Mr. Caplani. Thank you. Thank you, Your Honor. May it please the Court. William Glasser for the United States. To address the variance issue first, there are some key facts in this case that demonstrate why this was a single conspiracy and not, as defendants allege, two separate conspiracies. One of them, as the Court has alluded to, is the fact that at both the beginning and the end of this conspiracy, the California defendants were willing to front drugs to the Boston defendants. Another is that the Boston defendants were willing to prepay substantial amounts of money to the California defendants to make it easier for the California defendants to purchase further drugs. One prepayment we know was $50,000, and Mr. Tata testified that on several other occasions there were prepayments for two kilograms of cocaine, which at the going rate would have been about $60,000. So there was interdependence demonstrated between the two components of this conspiracy because they were willing to assist one another in selling cocaine in Boston and acquiring cocaine in California. That just makes me a little worried because you say they're willing to assist. I mean, any time there's a loan, you could say that they're willing to assist, but we've suggested that that might not be enough. If I ask the question, is there any evidence apart from the loans that might indicate that each half of this conspiracy was interested or had a stake in the success of the other? Yes, Your Honor. First of all, as this Court acknowledged in the Ortiz-Islaws case, the jury, we're here under a sufficiency review, so a jury can reasonably infer that one aspect of conspiracy has an interest in the success of the other half when they're receiving substantial amounts of money. In this case, we had over $1 million worth of drugs transported from California to Boston. So Boston defendants had an interest in being able to receive that cocaine, and the California defendants had an interest in getting rid of that cocaine. Now, we don't have any sort of direct evidence here where they say, oh, I'm glad you're making a lot of money on this. No, obviously they were self-interested. They wanted to make sure they were paid. The Boston defendants wanted to make sure that they had cocaine that they could sell. But that's adequate under this Court's precedent, and even under the Seventh Circuit precedent that defendants point to. The Seventh Circuit has said that where you have repeated sales in substantial quantities on credit, but that is enough to find a conspiracy and not simply a buyer-seller relationship. Here we had 10 or 11 deliveries, amounts of somewhere between 37 and 41 kilograms of cocaine, and over $1 million worth. So this is not... On credit? 10 or 11? No, Your Honor, on credit. We know of 2 kilograms on credit, so that would be about $60,000. And we know of... And that's two transactions? That's correct, Your Honor. How many transactions were there in the Seventh Circuit case, just as a rough comparison? You say repeated. In the Brown case, I believe there were about a dozen, but I'm sorry, I'm a little fuzzy on the facts in that case. But if we adopted this idea that the idea would be as long as there's more than one, the jury's entitled to find it? Your Honor, this Court has actually said that even one transaction, when there's enough other facts, can be enough. But here it would be with no other facts, as long as there's two, that would be enough? Your Honor, I don't think that the Court needs to reach that sort of a holding. I think the Court can say that here the totality of the facts were sufficient to justify the jury's verdict. The totality including the loan in the other direction? That's correct, Your Honor, including the prepayments. Which in and of itself may not be enough, but when you put the two together, that's your point, is that it? That's correct, Your Honor. And again, this is a totality test. It's whether or not any reasonable fact finder could have concluded that there was a single conspiracy alleged in the indictment. There was also extensive communication between the two sides of the conspiracy. There were more than 250 phone calls between California conspirators and Boston conspirators. And regardless of how you parse that, who called whom, that's still significant transactions going across the country. Now, with respect to prejudice, if this Court were to find a variance, the evidence of the smaller conspiracies that defendants assert exist here was overwhelming. There's no question. They haven't contested that they were guilty of conspiring to distribute cocaine. The only question is whether or not it was a single conspiracy. So the evidence was overwhelming, and the only prejudice that they identified is so-called spillover prejudice. In other words, that Mr. Bedini was convicted based on the evidence introduced against Mr. Capuoni and vice versa. It is true that if they had been charged and tried separately, that the evidence of the Florida transaction likely would not have been admissible against Mr. Bedini. However, to suggest that the only reason he was convicted is because of that evidence, of a completely separate Florida transaction, is to insult the intelligence of the jurors. They can decide, they can determine that that was evidence that was against Mr. Capuoni and not against Mr. Bedini. Similarly... So you're suggesting, as I understand it, that where the evidence of guilt in the alleged smaller conspiracy is very strong, the showing of spillover prejudice has to be correspondingly higher. That is correct, Your Honor. And I think that comports with this court's case in De Los Santos, which is sort of on the far end of finding prejudice from a variance. In De Los Santos, this court did find prejudice from a variance, but it noted that the evidence against the other defendants, there was substantial evidence against the other defendants, including more than 100 telephone calls that were introduced, but it said that the evidence against the defendants who were engaged in the smaller conspiracy was only arguably sufficient. So the court didn't even decide whether or not the evidence was sufficient. It said that it was arguably sufficient and that that resulted in prejudice, because you had all this evidence against the co-conspirators and very little against the conspirators engaged in the smaller conspiracy. This case is very different. You had overwhelming evidence against the defendants with respect to these forsaken argument two conspiracies, and the spillover was minor. Additionally, in the De Los Santos case, this court found a prejudice problem with notice, which this court has said is another type of prejudice in a variance case. Here, there are no allegations that there was a notice issue. It's very clear from the reading of the indictment what the defendants were being charged with. If the court has no further questions on variance, I will move on to the sentencing issues. And just to briefly clarify our position with respect to the standard of review for Mr. Capillani, the government's argument is not that Mr. Capillani failed to preserve any objection to the drug quantity finding. Rather, his primary contention on appeal is that the district court failed to make a defendant-specific finding as opposed to a conspiracy-wide finding. And this court has said that it reviews de novo whether there was a conspiracy-wide or defendant-specific finding. But if it was defendant-specific, then the review is for abuse of discretion. Now, here, Mr. Capillani never argued that the district court failed to – he never objected to the district court that the court failed to make an individualized finding. And if you look at the PSR, it's very clear this was an individualized finding. Mr. Capillani did not have drugs attributed to him that were attributed to Mr. Bedini, such as the drugs that were delivered by Mr. Bedini to defendants – to unjudged co-conspirators in British Columbia, etc. So he did not preserve that. Now, he did preserve an objection to the drug quantity finding. He said that the court should only base its drug quantity determination on the amounts that were seized in the Florida transaction and in the stop of Mr. Mendoza and the, I believe, half kilogram that was seized from Mr. Naziri that was stored in his house. The district court very reasonably rejected that argument. They had sat through voluminous testimony demonstrating more than 40 kilograms of cocaine that had been transacted, and the court concluded that that was enough to show at least 15 kilograms, which is all that was needed to find the base offense level of 32 under the guidelines. So Mr. Capillani did not preserve his objection that this was a conspiracy-wide finding. That's reviewed for plain error. And to the extent that he's raised an argument that there was insufficient evidence for the court's drug quantity determination, the evidence more than adequately supported that, and that's something that's reviewed for clear error. Am I missing something? Is it possible that what the defense counsel was representing to the judge initially is, all you've got is evidence of a conspiracy-wide finding, so you can't rely on that as the evidence of my individual drug quantity? Judge disagrees with that, makes the finding, but in the defense counsel's eyes, having said once this evidence just is a conspiracy-wide finding, what was he supposed to do to preserve the objection afterward that there had been no individualized finding? Your Honor, he actually did not ever say that this is a conspiracy-wide finding. What he said is that the jury necessarily must have disbelieved all this testimony that you just heard, and therefore you can't find me responsible for anything above and beyond what was actually seized. So he never said this is conspiracy-wide versus defendant-specific, and that's the problem. If he had made that argument to the district court, then it would have been preserved. With respect to the disparity amongst the sentences, again, as Judge Celia has pointed out, part of that disparity obviously is a result of the Weaver enhancement that was, the organizer enhancement that was applied in this case, but this court has also said that a disparity among co-defendants must involve identically situated co-defendants, and that where there are distinguishing factors, such as in this case, some of them pleaded guilty, some of them did not, and in Mr. Caploni's case, the fact that he was an organizer and leader in this conspiracy, that that is more than adequate to show that there is not an improper disparity amongst the sentences. Caploni seems to be making a little different claim, though. One of the things he's saying is that part of the disparity here is that I was found to be an organizer and leader and got this substantial four-level enhancement, but my alleged partner, Bedini, didn't get it, and that in itself is disparate sentencing treatment. Yes, Your Honor, and that's a somewhat confusing claim to categorize in terms of how this court would review it, because with respect to the facts supporting the enhancement, it really doesn't matter whether someone else received it or not. The facts did support it, and we make that argument in the brief. With respect to the disparity, I think the answer is that Mr. Bedini did not have the same facts that would support the enhancement in his case. In other words, there were other co-defendants who should have received the same enhancement. Is that what we have to decide in order to reject the claim? Your Honor, or is it that it doesn't matter because the judge is able to decide for a whole bunch of reasons? With respect to you, I'm going to go all the things that you're capable of. With respect to him, even if he had facts that would justify him being an organizer too, I have reasons why I'm not going to do that. Your Honor, I think that the question for this court is more like the latter. So I think the court needs to decide whether or not there were adequate facts to support the enhancement against Mr. Capulani. I think that's preserved, and this court should decide that. With respect to the disparity argument, I think it's sufficient for the court to say that the PSR did not suggest that Mr. Bedini or any other co-defendant should have received that enhancement. Did it suggest that Capulani should? Yes, Your Honor. That was within the PSR. The PSR didn't suggest it, and therefore the court didn't need to go further to justify its sentence when the PSR hasn't suggested that the government didn't ask for it. But I think even that may give Capulani too much credit, because I'm not aware of any disparity claim that's ever been entertained based on the fact that one defendant got an enhancement and some other defendant didn't. Disparity claims are usually bottom-line claims. At best. I think Ray Santiago is a little bit like that, though. I take Judge Selya's point, though. Really, it's difficult for one defendant to assert that another defendant should have gotten a higher sentence. What do you make of Ray Santiago? Isn't that what happened to Ray Santiago? Your Honor, I'm sorry. I can't speak with any clarity. It's a one case where our circuit has never held that there was a substantive disparity. Your Honor, yes, and I think that part of that was based on the sentencing guidelines, but I think there are other factors. I'm sorry, I'm not able to speak to that with any authority. But in this case, it's sufficient for the court to conclude that there weren't unwarranted sentencing disparities, because Mr. Capulani certainly appropriately received that enhancement, and there aren't any of these other factors of identically situated defendants who were treated disparately. Mr. Bonini, he was primarily working on the West Coast side with Mr. Marra. Mr. Capulani was in Boston, and he was overseeing a substantial number of people out of the Arbery Cafe, and that alone is sufficient to support the district court's conclusion that it was appropriate with respect to Mr. Capulani. And if the court has no further questions, I will yield my time. I'd like to focus first on the variance issues, in particular the Brown case from the Seventh Circuit that counsel cited. In that case, the facts were significantly more extreme. The defendant paid about $27,000 for about a million dollars of cocaine. There were 30 to 40 deliveries over two years under drug ledgers, much stronger facts, and many, many more credit sales. Let's look to the inference regarding the phone calls. I think most of those were placed to Marra, who was the clear linchpin of the alleged California conspiracy. And those really can't be attributed to Mr. Bedini. I'd also point out that Bedini and Capulani were never alleged to have been partners in this. They were merely the last two defendants left after the other defendants had pleaded guilty, and that's essentially why they were tried together. There was no allegation of a partnership between those two defendants. With respect to prejudice, I should also clarify that Mr. Bedini does maintain his innocence. We just don't simply challenge the sufficiency of the evidence to show the smaller conspiracy. But Mr. Bedini did maintain his innocence at trial and testified to that effect. I'd also like to point out that with respect to the Florida evidence regarding the Homestead Florida bust, there weren't any limiting instructions regarding whether that evidence could be used solely against Mr. Capulani or Mr. Mendoza as opposed to Mr. Bedini. And that was an important factor that this Court considered in the Portela decision when it considered whether a defendant had been prejudiced by spillover evidence. And again, that wasn't present here. In addition to the flaws in the conviction, we'd also like to just briefly mention the sentencing issues. Again, Mr. Bedini does maintain a challenge to both the procedure and substance of the sentencing. Unlike what Mr. Capulani argued, there was a drug weight finding for Mr. Bedini, but there otherwise was no meaningful 3553A analysis, which is particularly problematic given the lack of a consideration of the sentencing disparities. Thank you. Thank you, Your Honor. In the short time I have, it is the Ray Santiago case that does give this Court authority to take a look at whether the sentence that was imposed on Mr. Capulani was, I think the word, the phrasing used was uniquely harsh. And I agree, Judge Saria, I have not found a case when it's about an enhancement. But what I'm asking the Court to look at in this supposed or found multinational conspiracy to distribute cocaine, there were apparently no leaders. Not a single other defendant was found to be a leader. Even Mr. Capulani was found only to be an organizer, which gives him the same four-point enhancement. We dispute that on the record. But even if that's the case, the problem is the consequence of whether or not it was in the other PSRs. The sentence is enhanced, and it's unfair, and frankly not explained by the Court. And we think that this Court under Ray Santiago can review that, that only he received that enhancement. And it's a backdoor way by which his sentence is jacked up and other sentences are disparately below. Just a moment. Why is the fact that it's mentioned in the PSR in one and not in the other not a sufficient distinction to explain why the judge might have decided to think there's no reason to go into it as much with the one as opposed to the other? Well, in Mr. Capulani's PSR, Mr. Laca, and I would actually say the closer comparison is Mr. Laca than Mr. Bedini, Mr. Laca is described as Mr. Capulani's partner. And so I think there are facts in the PSR. Whether or not the probation or whether there was some reason to leave it out, I cannot say. But it is troubling that the facts that demonstrate essentially partnership all the way through, when we get to sentencing, Mr. Capulani, who exercised his trial rights, gets the four-point enhancement, and other defendants don't. There are, I understand the three-point reduction. But when defendants plead, the government frequently underjudges. I mean, there's nothing, that's a well-known circumstance, and there's nothing wrong with it. Well, it's part of the plea bargain. Well, Your Honor, it does not appear to be part of it. It is true that he, I'm not disputing that there might be a distinction based on a three-point adjustment, or whether or not there may be some instances of cooperation. The troubling fact is that in all of these defendants, we had, I can't count how many there are right now, but there are nine defendants, only Mr. Capulani got that enhancement. And the facts simply don't support that he's the only one. If I remember, in Reyes, it was something like, there's no reason why you wouldn't think all of them were responsible for 100 grams, or 100 kilograms. But only one is identified as having 100 kilograms, and everybody else gets to stipulate to 3 kilograms. And on that record, the court said, well, you've got to look into and explain why there's this disparity. You're saying it's a similar type of thing. They all have the same facts that would support being an organizer, and yet one gets tagged with being an organizer and the others don't. That's exactly right, Your Honor, that it's uniquely harsh, and that at a minimum, although I think this court can look at the record, there's not even an explanation for that in the record. There's not an explanation for that disparity. But I think under Gall and its progeny, defendants are entitled to at least that, but I think this court can look at the record and say that it should be remanded for resentencing on that, in addition to the other arguments I've preserved. Thank you, Your Honor. Thank you. She's going to call it. She couldn't make it. I think we can go ahead. We should cut the prosecutor's time down by 10 minutes to make up for the fact that she's not going to argue. Okay. Okay, so then the prosecution should get 13. Okay.